FILED & ENTERED

FEB 14 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>David B. Allen<br><br>                              Debtor(s). | CHAPTER 13<br><br>Case No.:  1:16-bk-10068-MT<br>Adv No:    1:16-ap-01134-MT |
| John Kutasi,  West Valley Collection Services, Inc.<br><br>                              Plaintiff(s),<br>      v.<br><br>David B. Allen<br><br>                              Defendant(s). | **MEMORANDUM OF DECISION RE MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br><br>Date:         February 7, 2018<br>Time:        1:00 p.m.<br>Courtroom:  302 |

## I. Background

In or about April 2014, Plaintiffs John Kutasi ("Kutasi") as owner and president of West Valley Collections Services, Inc. ("WVCS") (collectively, "Plaintiffs") and Josh Allen and his brother, David Allen (individually as "Josh" and "David," collectively as "Defendants") agreed to join their businesses. Prior to the agreement, Josh and David state that they had been in the merchant services business for more than 17 years. The

business was to operate under a newly formed entity, Open Payment Systems, LLC, a Nevada limited liability company ("OPS").

On or about May 22, 2014, Agoura and West Valley entered into an Operating Agreement for OPS (the "OPS Agreement"). The OPS Agreement reflects that the members of OPS are Agoura Partners, LLC ("Agoura") and WVCS and that Kutasi, Josh and David would be the managers of OPS. Complaint, Ex. 1. Josh and David are the sole members and managers of Agoura. The parties dispute the facts about the circumstances regarding the funding provided for in the OPS Agreement.

Plaintiffs contend that Defendants signed a promissory note, individually and as "members" on behalf of Agoura, in exchange for a loan of $100,000 (the "Allen Note"). Complaint, 2:26-3:4; Ex. 2. Plaintiffs' position is that the proceeds of the loan were to pay legal fees previously incurred by David and Josh, and was unrelated to OPS' capitalization. Id. Plaintiffs allege that Defendants orally represented to Kutasi that they (David and Josh) would be "personally liable and responsible for repayment of the Allen Note when it came due…." Decl. of John Kutasi ISO MSJ (the "Kutasi Decl.").

Defendants disagree with Plaintiffs' version of the facts related to the Allen Note. Defendants contend that a portion of the capitalization of OPS was in the form of the loan. Josh and David allege that they agreed to transfer 33% of the membership interest of OPS to Kutasi and WVCS in exchange for $300,000. Decl. of David Allen ISO Opposition (the "David Decl."), ¶5; Decl. of Joshua Allen ISO Opposition (the "Josh Decl."), ¶5. On or about May 23, 2014, Josh and David allege that the parties verbally agreed that $100,000 of the consideration of the shares would instead be in the form of a loan, memorialized by the Allen Note, which would be repaid from David and Josh's share of the OPS profits. David Decl., ¶ 6; Josh Decl., ¶ 6; see also Opp. of David Allen to MSJ (the "David Opposition"), 3:25-4:2; 6:16-17 ("Josh and David signed the Promissory Note based on the verbal agreement with Kutasi that the loan was to be paid from OPS's income or profits (otherwise owed to David and Josh.)"). The other $200,000 payment was reflected in the OPS Agreement. David Decl., ¶ 7, Ex. Ex. A, p. 21; Josh Decl., ¶ 7.

Kutasi disputes Defendants' allegation that the parties verbally agreed that the repayment of the Allen Note was contingent upon OPS's performance and to be paid from Josh and David's portion of OPS' income. The parties engaged in litigation in the California Superior Court, commenced on or about September 2015 (the "State Court Litigation"). During the State Court Litigation, David and Josh returned to Plaintiffs verified responses to Requests for Admission, within which the Defendants explained that they had no intention of personally repaying the Allen Note. Decl. of Jeffrey Gersh ISO MSJ, Ex. 3-6.

On January 11, 2016, Josh filed a voluntary chapter 7 bankruptcy petition with this Court, assigned case number 1:16-bk-10062-MT. On that same date, David filed a chapter 13 bankruptcy petition with this Court, assigned case number 1:16-bk-10068-MT. On September 16, 2016, Plaintiffs filed complaints against Josh and David under various subsections of § 523(a) to determine dischargeability.

Plaintiffs moved for summary judgment on the § 523(a)(2)(A) claims against Josh and David. Plaintiffs rest their case, in part, on the admissions of David and Joshua, under oath, in the State Court Litigation Requests for Admission and at their 2004 Examinations. Plaintiffs argue that the evidence presented shows that David and Joshua admitted that when they executed the Allen Note, they had no intention of paying it personally. David and Joshua, for their part, maintain that they orally agreed with Kutasi to pay the Allen Note from their share of the OPS profits, rather than be personally liable for the Allen Note.

## II. Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 886 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

## III. Evidentiary Objections

Kutasi and WVCS filed eight evidentiary objections to the declarations of David and Josh Allen. Objections 1, 2, 6, 7, and 8 are overruled. As explained in more detail in this Memorandum, the parol evidence rule does not apply in a § 523 action in this way. The statements also are not hearsay because they go to Defendants' state of mind or are the statements of a party opponent. Fed. R. Evid. 803(3); 801(d)(2)(A). Objections 3 through 5 are sustained as hearsay and irrelevant.

## IV. Analysis

A. 11 U.S.C. §523(a)(2)(A)

To prevail under this section the plaintiff must demonstrate that:

(1) the debtor made a false representation;
(2) at the time the debtor knew the representation was false;
(3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;

(4) the creditor justifiably relied on the representation; and

(5) the creditor sustained loss and damage as a proximate result of the representation having been made.

11 U.S.C. §523(a)(2).

Consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under § 523 are to be narrowly construed. See Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir.1992). A creditor bears the burden of proof to establish each of the five elements by a preponderance of the evidence. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir.2000).

### *Knowingly False and Intent to Deceive*

Plaintiffs contend that Defendants' answers in the RFAs and the 2004 Transcripts establish that the Defendants defrauded Plaintiffs by promising to repay the OPS Note without any intent to repay it. RAF 1-49.

As explained above, Josh and David maintain that the Allen Note would be repaid from David and Josh's share of the OPS profits. David Decl., ¶ 6; Josh Decl., ¶ 6; see also David Opposition, 6:16-17. Kutasi disputes Defendants' allegation that Kutasi and WVCS agreed that the repayment of the loan was contingent upon OPS's performance and be paid from OPS's income. Kutasi argues that it is not plausible that he would agree to be repaid from the profits of OPS, questioning why Plaintiffs would agree to use their own funds to repay a portion of the funds owed.

Here, Plaintiffs misinterpret Defendants' position. Josh and David do not allege that the Allen Note was to be repaid from the gross profits of OPS. Instead, Josh and David contend that they intended to pay the OPS Note from *their share* of the OPS profits. Id. The terms of the OPS Agreement itself lend credence to Defendants' belief.

The OPS Agreement provided for WVCS to pay its capital contribution loan from the profits of OPS. Article 3.1 states in relevant part:

> Notwithstanding anything to the contrary herein, West Valley Collection Services, Inc., shall be entitled to fund Fifty Percent (50%) of its Capital Contribution by way of a loan to the Company […] and shall be repaid after the maturity date only from the profits of the Company (if any) pursuant to a payment schedule unanimously agreed upon in writing between the Members […].

Complaint, Ex. 1, ¶ 3.1.

It is plausible that, given the above-quoted provision in the OPS Agreement, Defendants believed that they would be afforded the same chance to repay the Allen Note from their share of the OPS profits. Indeed, Defendants contend that such provision was bargained for with Kutasi. Plaintiffs stretch the Defendants' admissions that they "personally had no intention of paying the Promissory Note" into a broad statement that Josh and David never intended to pay the loan. That is not Defendants' positon, and there is sufficient information in the record to make each party's explanation plausible. Here, where different ultimate inferences may be drawn from the parties' differing characterization of the facts, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

### *Justifiable Reliance*

The standard for fraud under § 523(a)(2)(A) requires that the standard from tort law be applied to the element of justifiable reliance; that "justification is a matter of the qualities of the particular plaintiff." Field v. Mans, 516 U.S. 59, 70, 71 (1995). Thus, for fraud under §523(a)(2)(A), we inhabit the particular mindset and circumstances of the plaintiff in question to determine whether or not a plaintiff is willfully blind to the potential for fraud presented to them. Heritage Pac. Fin., LLC v. Trejo (In re Trejo), 2011 Bankr. LEXIS 4292, 14 (Bankr. N.D. Cal. Nov. 2, 2011).

Whether a plaintiff's reliance was justified is judged in light of the totality of the circumstances on a case-by-case basis. Cashco Fin. Servs. v. McGee (In re McGee), 359 B.R. 764, 774 (B.A.P. 9th Cir. 2006) (internal citations omitted).

Plaintiffs' reliance on Josh and David's alleged representation that they would *personally* repay the OPS Note, on summary judgment, is misplaced. Attached to the Complaint is a promissory note evincing a $100,000 loan from American Business Bank to OPS, signed by Kutasi and Defendants as managing members of OPS (the "ABB Note"). Complaint, Ex. 3. The ABB Note was guaranteed by Kutasi. Id., Ex. 5. In response to Plaintiffs' questions at his 2004 Examination, David explained that neither he nor Josh guaranteed the ABB Note. Decl. of Jeffrey Gersh ISO MSJ, Ex. 8, 4:10-15. Then, David goes on to explain that Kutasi guaranteed the ABB Note because "he [Kutasi] had the banking relationship and the finances to be approved for it." Id. By David's explanation, he and Josh were not sufficiently creditworthy to be guarantors on the ABB Loan. Id., Ex. 7, 5:9-17. Thus, there is a question of material fact as to whether Kutasi was justified in his reliance on Defendants' alleged promise to repay the Loan *personally*, rather than from what would be a more reliable stream of money - the Allen's portion of the OPS profits.

While Plaintiffs stress that the ABB Note and the Allen Note were different transactions, and the Allen Note was not related to the capitalization of OPS, the Court's inquiry is broader. As stated above, whether a plaintiff was justified in relying on a debtor's representation is judged in light of the totality of the circumstances, keeping in mind that the inquiry is subjective. Thus, Kutasi's knowledge of the lack of creditworthiness of David and Josh is a question of material fact that would go directly to whether Plaintiffs'' reliance on the personal liability of Defendants was justified. See generally, Eugene Parks Law Corp. Defined Benefits Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1461 (9th Cir. 1995) ("[l]enders do not merely rely upon the representations of borrowers. That is especially true when the lender knows that the borrower is having financial difficulties and does not always pay his bills in a timely fashion.").

***Parol Evidence***

In California, the parol evidence rule provides for certain exceptions, including establishing fraud. Cal.Civ.Proc.Code § 1856(g). Here, Plaintiffs are not seeking to enforce or void the written agreement; instead, they are seeking a judgment of nondischargeability and damages for fraud.

Defendants' cite the California Supreme Court's recent decision in <u>Riverisland Cold Storage, Inc. v. Fresno–Madera Production Credit Assoc.</u>, 55 Cal.4th 1169 (Cal. 2013) to support their position that this circumstance falls under an exception to the parol evidence rule. While dropping a short assertion in a footnote that the OPS Note is ambiguous on its face, Defendants also contend that they believe that Plaintiffs fraudulently induced them to sign the OPS Note by agreeing verbally that the OPS Note would be paid from Josh and David's share of the OPS profits. David Decl., ¶ 21, Ex. C, p. 2; Josh Decl., ¶ 21, Ex. C, p. 2; <u>see also</u> <u>David Opposition</u>, 8:27-9:3.

In <u>Riverisland</u>, the California Supreme Court reaffirmed the statutory exception to the parol evidence rule that allows a party to present extrinsic evidence to show that a written agreement was procured by fraud, even if the alleged misrepresentations were inconsistent with the subsequent language contained in the written agreement. <u>Id.</u> at 1174–1183; <u>see also</u> Cal. Code Civ. Proc., § 1856(g). In so doing, the California Supreme Court overruled <u>Bank of America Assn. v. Pendergrass</u>, 4 Cal.2d 258 (Cal. 1935), which held that alleged misrepresentations to induce a party's assent to the contract are inadmissible if the alleged misrepresentations are inconsistent with the provisions of the written contract. The <u>Riverisland</u> court reasoned that <u>Pendergrass</u> was not supported by the plain language of Code of Civil Procedure § 1856 and <u>Pendergrass</u> "failed to account for the fundamental principle that fraud undermines the essential validity of the parties' agreement." <u>Riverisland</u>, 55 Cal. 4th at 1182. The <u>Riverisland</u> court stated: "When fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds." <u>Id.</u>

Plaintiffs argue that Riverisland is inapplicable here because Defendants did not allege fraud in their respective Answers to the dischargeability complaints or argue in this forum that Plaintiffs engaged in any promissory fraud. This is not an accurate statement of Defendants' position. See David Decl., Ex. B, ¶ 47; Ex. C, 37:11-14. Irrespective of the parties' disagreement about whether an ambiguity on the face of the Allen Note exists, the Court need not reach the issue. In the context of a dischargeability action that sounds in fraud, the parol evidence rule does not apply under the fraud exception. Defendants were not required to plead in their respective answers their allegations of fraud against Kutasi as they are not seeking damages and such facts would be no defense to a nondischargeability action.

Further, as for Josh, he did not have standing to bring such claims. Legal claims and causes of action held by a debtor that existed at the time the debtor's bankruptcy case was filed become property of the estate. See 11 U.S.C.§ 541(a). See also City & County of San Francisco v. PG & E Corp., 433 F.3d 1115, 1126 (9th Cir.2006); Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 (9th Cir.1986). Josh's rights of action to collect damages for such alleged fraud were prepetition assets and, thus, property of his bankruptcy estate. A review of Josh's bankruptcy docket shows that, at the time his answer was filed, this property of the estate has not been abandoned, and only the chapter 7 trustee had the right and ability to sue for recovery. See In re Spirtos v. One San Bernardino Cnty. Superior Ct., 443 F.3d 1172, 1175 (9th Cir.2006) (citing Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir.2004) ("[A] trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate.")).

For the reasons explained above, the Court finds that Defendants are not barred by the parol evidence rule from introducing evidence at trial to support their theory of the case, e.g., that the repayment terms of the Allen Note agreed to orally by the parties were that it would be repaid from Josh and David's portion of the OPS profits.

## V. Conclusion

Summary judgment under 11 U.S.C. §523(a)(2)(A) is DENIED.  Defendants are to lodge a proposed order as required under the procedures of LBR 9021-1(b).

###

Date: February 14, 2018

Maureen A. Tighe
United States Bankruptcy Judge